UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
UNITED STATES OF AMERICA          :
                                  :
v.                                :     **ORDER**
                                  :
                                  :     19 CR 816 (VB)
KSAON CRUTE,                      :
                    Defendant.    :
--------------------------------------------------------------x

     Defendant Ksaon Crute moves for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), making the following arguments: his sentence is longer than those imposed on similarly-situated defendants and longer than the sentence that would be imposed today; he has made substantial efforts to rehabilitate himself while in prison; his conditions of confinement during the COVID-19 pandemic have been unduly harsh, including because he has received inadequate medical treatment while in custody; and he needs to be home for his children.[1]

     For the reasons set forth below, the motion is DENIED.

     The relevant facts are as follows: On September 1, 2019, Crute participated in an armed robbery in Mt. Vernon, New York. The crime was witnessed by a female bystander, who reported it to the police. Shortly thereafter, a Mt. Vernon police vehicle activated its lights and siren in an attempt to pull over the car in which Crute and his co-conspirator (Findley) had fled the scene. Findley put the car in reverse, drove for a short distance, then jumped out and attempted to flee, at which point Crute moved into the driver's seat and drove off at a high rate of speed. A few minutes later, Crute's car collided with another Mt. Vernon police vehicle that was attempting to make a left turn. That collision caused a collision with a third car, and Crute was ejected from his car.

     Both police officers in the vehicle into which Crute crashed were injured. One officer ("Officer-1") grabbed his partner as Crute's car was racing toward them and said, "we're going to die." Officer-1's face smashed into the windshield and his leg went through the center console. Taken to a nearby hospital, Officer-1 received stitches for his facial injuries and underwent emergency surgery on his leg; he was hospitalized for two weeks thereafter. Due to his injuries, Officer-1 was permanently disabled from returning to work as a police officer, and he continues to suffer pain and limitation of movement in his leg, as well as emotional distress. Officer-1's partner suffered an ankle injury and was out of work for a month. The passengers in the third car, a father and his five-year-old son, were also injured in the multi-car collision, as was Crute.

---

[1]     In deciding the motion, the Court has considered Crute's motion and attached exhibits (Doc. #63), the government's opposition and attached exhibits (Doc. #65), Crute's supplementary letter dated June 6, 2023 (Doc. #66), and the underlying record of this case. Crute has not filed a reply, and his time to do so has expired. (Docs. ##64, 67).

After Crute was arrested, officers recovered a .22 caliber handgun from the front passenger area of his car. At the time of these events, Crute had two prior felony convictions for illegal weapons possession. One was a federal conviction for being a felon-in-possession of a firearm, for which he was then serving a term of supervised release.

In sum, within the span of a few minutes, Crute robbed one person at gunpoint, nearly killed four others, and possessed a firearm as a convicted felon.

On September 14, 2020, pursuant to a plea agreement, Crute pleaded guilty to being a previously convicted felon in possession of a firearm, and his agreed-upon Sentencing Guidelines range was 77 to 96 months' imprisonment. He also admitted to violating the conditions of supervised release.

On June 4, 2021, after considering all of the statutory sentencing factors set forth in 18 U.S.C. § 3553(a), and also considering, among other things, mitigating information about Crute's troubled upbringing, his history of mental health problems, the impact of his incarceration on his family, and the unusually harsh conditions of his confinement during the pandemic, the Court imposed a sentence of 77 months' imprisonment, followed by three years of supervised release. The Court stated Crute's personal history and characteristics warranted a sentence at the low end of the Guidelines range, but not below it, and that the sentence was sufficient but not greater than necessary to reflect the extremely serious nature of the offense and associated relevant conduct, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. The Court also imposed a consecutive sentence of six months' imprisonment for violation of supervised release.

Crute has been in custody since September 1, 2019, or approximately 48 months, which means he has served less than two-thirds of the sentence imposed.

The law does not permit a sentence of imprisonment to be reduced once it has been imposed, except in the rare circumstance in which the Court, "after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that . . . extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i).

Crute has not identified any extraordinary or compelling reasons that would warrant a reduction of his sentence. And even if he did, consideration of the Section 3553(a) factors would compel the Court to deny his motion.

First, Crute's argument that his sentence is longer than sentences imposed on similarly-situated defendants and longer than the sentence that would be imposed today is simply not true. Crute cites the First Step Act, but that statute was enacted in 2018 before Crute committed the instant offense. Nothing has changed since then as to the potential sentences that might be imposed or as to the applicable Guidelines range. Moreover, Crute compares his sentence to sentences imposed for crimes that are entirely different than his.

Second, Crute's efforts to rehabilitate himself while in prison is laudable, but it is not extraordinary because it is expected of every inmate. Crute should continue to avail himself of the opportunity to become a better person, which will make it less likely he will recidivate when

he returns home at the end of his sentence. That outcome will be good for Crute and his family, and good for the community.

Third, as to the harsh conditions of Crute's confinement during the pandemic, which were the result of restrictions placed on prisoner movement, visitation, recreation, program participation, and the like, these restrictions are why the federal Bureau of Prisons ("BOP") has managed to keep its inmates reasonably safe during the pandemic. This is plainly not an extraordinary or compelling circumstance warranting a reduced sentence; if it were, every inmate in federal custody would be released. Moreover, Crute's BOP medical records reflect he has received adequate medical care while in custody, including regular medical attention for issues both physical and emotional (including the lasting effects of injuries he suffered in the September 1, 2019, car crash), and has repeatedly been provided with guidance and relevant medication. And to the extent Crute argues his asthma and hypertension might pose an increased risk of serious illness if he were to contract COVID-19, his medical records indicate his asthma is not moderate or severe, and his hypertension is mild. Also, Crute has twice declined the Moderna vaccine for COVID-19, which is highly effective in preventing serious illness in COVID-19 patients, such that Crute cannot claim the dangers posed by the pandemic warrant his release.

Finally, it is truly unfortunate Crute is not home to support his children financially and emotionally. Of course, the only reason for that is his own appalling criminal behavior, which nearly destroyed the lives of several people and permanently injured a police officer engaged in the performance of his official duties. Crute is serving a lengthy sentence because it was well deserved given the seriousness of his own conduct and prior criminal history, not for any other reason. Moreover, at sentencing, the Court took into consideration and viewed as a mitigating factor the impact of Crute's incarceration on his family.

In short, the factors cited by Crute, whether considered individually or in combination, do not constitute extraordinary or compelling reasons warranting an early release.

In any event, even if Crute had shown extraordinary or compelling reasons, early release would not be warranted. This is because the Section 3553(a) factors continue to weigh strongly against Crute's early release. Although the Court commends Crute on his efforts to rehabilitate himself and urges him to continue to do so, the profoundly serious nature of his offense and its impact on the victims, particularly Officer-1, fully warranted the 77-month prison sentence at the time it was imposed, and continue to warrant that sentence. The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter Crute from future criminal conduct, and protect the public, argues strongly against any reduction of sentence.

Accordingly, the motion for a reduction of sentence is DENIED.

Chambers will mail a copy of this Order to defendant at the following address:

Ksaon Crute, Reg. No. 71262-054
FCI Petersburg Medium
Federal Correctional Institution
P.O. Box 1000
Petersburg, VA  23804

Dated: September 5, 2023
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge