**TANNER & ORTEGA, L.L.P.**
ATTORNEYS AT LAW
WWW.TANNERORTEGA.COM

HOWARD E. TANNER*
HUGO G. ORTEGA
*MEMBER OF N.Y., N.J. AND D.C. BAR

**NEW YORK CITY OFFICE**
277 BROADWAY
SUITE 1701A
NEW YORK, NY 10007
OFFICE: (212) 962-1333
FAX: (212) 962-1778

**WHITE PLAINS OFFICE**
170 HAMILTON AVENUE
SUITE 300
WHITE PLAINS, NY 10601
OFFICE: (914) 358-5998
FAX: (212) 962-1778

April 7, 2025

Honorable Vincent L. Briccetti
United States District Judge
Southern District of New York
United States District Courthouse
300 Quarropas Street
White Plains, NY 10601

By ECF and Email/PDF

> Re: *United States v. Ksaon Crute*, 19 Cr. 816 (VB)
> BOP Separation Orders Vacatur Issue

Dear Judge Briccetti:

By the defendant's letter to the Court, dated February 24, 2025 (ECF Doc No. 81 at 2-3), he asks that Your Honor vacate previously issued separation orders imposed upon him while incarcerated within facilities of the Bureau of Prisons ("BOP") for the above matter. I write pursuant to the Court's Order (ECF Doc No. 81 at 1) directing me to advise as to whether the Court has the authority to grant the relief requested. For the reasons detailed herein, I believe that this Court may rule on the merits of the defendant's request and grant or deny the relief requested.

### A. **RELEVANT FACTUAL BACKGROUND**

I was previously appointed to represent the defendant, Ksaon Crute, pursuant to CJA. On September 14, 2020, the defendant pleaded guilty to Felon in Possession of a Firearm in violation of 18 U.S.C. §922(g)(1) and 2. On June 4, 2021, the Court imposed a sentence of 77 months' imprisonment to be followed by 3 Years Supervised Release (ECF Doc No. 49). Mr. Crute is currently transferred by BOP to the Drapelick Center Halfway House in Bloomfield, Connecticut.

[redacted] On May 26, 2021, I emailed the Government requesting that they ask BOP to impose a separation order for specific inmates. On May 27, 2021, the Government responded that the requests were made to the BOP. On June 17, 2021, at the defendant's request, I provided two additional inmates' names to the Government asking for separation. On June 24, 2021, the

Government confirmed by email that those additional names were submitted to the BOP. Upon information and belief, the BOP imposed the separation orders as requested.

Now, in his letter to the Court (ECF Doc No. 81 at 2-3), the defendant asks to vacate those same separation orders on the grounds that they are preventing his movement to a New York Halfway House where he has "all [his] resources such as support system, his children, plenty of job resources and opportunitys (sic)…" *Id*. at 2; i) he personally requested the separation orders, ii) he had no co-defendants in the instant case, and thus never testified against anyone, and iii) is not at all concerned for his safety, "I'm not in danger I'm not at risk". *Id.* at 2.

### B. COURTS HAVE RULED ON THE MERITS OF REQUESTS TO VACATE BOP SEPARATION ORDERS

It would appear at first glance that the Court cannot grant the relief requested. "[A]ny decision of BOP relating to the place of confinement is not reviewable by any court." *Milchin v. Warden*, No. 3:22-cv-195 (KAD), 2022 U.S. Dist. LEXIS 93640, at *6 (D. Conn. May 25, 2022) (internal quotations omitted) (emphasis added), quoting 18 U.S.C. §3621(b); see *U.S. v. Kanagbou*, 726 F. App'x 21, 25 n.1 (2d Cir. 2018) (noting that "district court does not control how the Executive Branch carries out a defendant's sentence"). As it pertains to a request for the vacatur of separation orders, Second Circuit District Courts are generally reluctant to "tell the Federal Bureau of Prisons to do anything." *United States v. Waiters*, No. 10-CR-87 (SLT), 2017 U.S. Dist. LEXIS 40589, at *7 (E.D.N.Y. Mar. 20, 2017).

As for halfway houses, 18 USC §3624 (g)(2)(B) establishes that such, "shall be subject to such conditions as the Director of the Bureau of Prisons determines appropriate." Notably, halfway houses are directly defined as "community confinement" pursuant to 18 U.S.C.S. app. §5F1.1, which directly relates to the aforementioned holding in *Milchin*.

However, notwithstanding the above cited cases, there are numerous examples of District Court Judges in this Circuit ruling on the merits of a defendant's request to have separation orders vacated. See, *United States v. Ayers*, No. 20-cr-239 (BMC) (RER), 2020 U.S. Dist. LEXIS 188948, at *2 (E.D.N.Y. Oct. 11, 2020); *United States v. Williams*, 2004 U.S. Dist. LEXIS 9653, at *3 (S.D.N.Y. May 28, 2004); *United States v. Rivera*, No. 13-CR-149 (KAM), 2014 U.S. Dist. LEXIS 7282, at *2 (E.D.N.Y. Jan. 21, 2014); *United States v. Ashburn*, No. 11-CR-303 (NGG), 2014 U.S. Dist. LEXIS 62656, at *46-47 (E.D.N.Y. May 5, 2014).

In *Ayers*, the Court denied the defendant's motion to lift the separation order, although the basis of the denial was a lack of constitutional implications, which are not present here. Second, the *Williams* Court entertained a request to compel the BOP to remove a separation order, but denied it on the grounds of security concerns which, as per Mr. Crute's letter to the Court, are no longer a factor in the instant matter. Third, the *Ashburn* Court also scrutinized the merits of the defendant's motion seeking vacatur of separation orders. Even though this motion was ultimately denied as well, the Court's decision was reached in light of a crucial factor distinguishable here: the Court specifically cited that "nothing had changed since the order was entered both for Defendants' own safety and the safety of other inmates." *Id*. at 47. The defendant states otherwise in requesting vacatur of the very separation orders he initially requested. There are no co-defendants in this case, he is no longer incarcerated in a BOP prison, confirms that he is not in danger and claims potential employment opportunities that he cannot avail himself of in Connecticut.

Fourth, and more on point to the issues presented here is *Rivera*, where it was the Government, of their own accord, that requested the BOP to impose a separation order on the defendant due to security concerns. The issue of modifying the order arose during a conference and the Court specifically asked the government to state their position regarding the orders. Upon receipt of the government's sealed *ex-parte* submission, the Court "decline[d] to direct the BOP to modify the separation [order]" having been "grounded on valid and corroborated security concerns." *Id*. Accordingly, as in the prior cited District Court cases, the *Rivera* court declined to modify the separation order, but did not decline to opine on the merits after ordering the Government to justify the basis for their continued imposition.

This creates an important distinction from the type of interference with the sole authority of the BOP described in *Milchin, Kanangbou* and *Waiters*, because if the Court were to grant the relief requested here, it would not in fact be "control[ling] how the Executive Branch carries out a defendant's sentence", 726 F. App'x 21, 25 n.1 (2d Cir. 2018), nor "…tell[ing] the Federal Bureau of Prisons to do anything." *United States v. Waiters*, No. 10-CR-87 (SLT), 2017 U.S. Dist. LEXIS 40589, at *7 (E.D.N.Y. Mar. 20, 2017). Similar to *Rivera*, the Court could request from the Government (since it was initiated by them at the defendant's request) the reason that the BOP separation orders should not be vacated and either grant or deny the defendant's request.[1]

Finally, to the extent that the defendant needs to exhaust administrative remedies, see, 28 U.S.C. §2241; *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001); see also *Ozsusamlar v. United States*, No. 05 CR 1077 (SAS), 2013 U.S. Dist. LEXIS 14425, 2013 WL 395118, at *2 (S.D.N.Y. Feb. 1, 2013); *Williams v. United States*, No. 00 CR 1008 (NRB), 2011 U.S. Dist. LEXIS 82967, 2011 WL 3296101, at *20 (S.D.N.Y. July 28, 2011), the Courts in *Ayers*, *Williams*, *Rivera*, and *Ashburn*, make no mention of it, instead opting to directly address the merits.

Nevertheless, in the instant matter, the defendant informs me that he made a request through Mr. Phillips, his Unit Manager at FCI Petersburg, to BOP, to vacate the Orders. Mr. Phillips replied to him that because the BOP did not directly initiate the Separation Orders, he should contact the Court, which led to his letter (ECF Doc No. 81 at 2-3). Mr. Crute should therefore be deemed to have exhausted his administrative remedies, if necessary, since the BOP will not take any action on his request and there is no indication that the Government will either.

### C.   CONCLUSION

Although confinement and movement of prisoners are under the sole authority of the BOP, not reviewable by any Court, the separation orders imposed in this case were initiated, not by the BOP but by the Government at Mr. Crute's request, who now wishes that they be vacated. Accordingly, and due to the foregoing, I respectfully submit that this Court has the authority to either grant or deny the relief requested.

Thank you, Your Honor, for your attention to this matter. I am, of course, available to the Court should there be any further questions or concerns.

---

[1] On April 2, 2025, I emailed the Government requesting that they contact BOP to vacate the separation orders. To date, I have received no response. On April 3, 2025, I emailed the Probation Office asking if they were aware of the issues raised in Mr. Crute's letter to the Court. They replied the same day stating that "this is a BOP matter and take no position on BOP/RRC placement".

                                        Very truly yours,

                                        Tanner & Ortega, L.L.P.

                                        Howard E. Tanner

cc:      AUSA Jeffrey Coffman (By ECF and Email/PDF)
          Mr. Ksaon Crute (By USPS to Drapelick Center Halfway House)